## In re AMERICAN DEPARTMENT STORES CORPORATION.

No. 1058.

District Court, D. Delaware.

Oct. 29, 1936.

Johns Biggs, Jr. (of Biggs, Biggs & Lynch), of Wilmington, Del., for trustee.

Winthrop Kellogg (of Berle & Berle), of New York City, and John J. Morris, Jr. (of Hering, Morris & James), of Wilmington, Del., for debtor.

James R. Morford (of Marvel, Morford, Ward & Logan), of Wilmington, Del., and John Z. Lowe and J. Hampton Dougherty, Jr. (of Lowe & Dougherty), both of New York City, for Schluter & Co., creditors.

Philip Hoffman and Morton Pepper, both of New York City, and Leonard G. Hagner, of Wilmington, Del., for Noteholders' Protective Committee.

Nathan Hamburger, of Baltimore, Md., for certain noteholders.

NIELDS, District Judge.

Objections to amended plan of reorganization.

April 14, 1934, American Department Stores Corporation filed its voluntary petition in bankruptcy in this court. On the same day an adjudication of bankruptcy was entered and the matter referred to a referee. In due course a trustee was elected.

June 16, 1935 the debtor filed its petition for reorganization under section 77B, Bankr.Act (11 U.S.C.A. § 207). December 13, 1935, a plan of reorganization was filed and set for hearing February 1, 1935. On that day the plan and objections thereto were referred to the referee as special master. After full hearing the special master found that the debtor was insolvent, that the second preferred and common stockholders were excluded from participation under the plan except the privilege of subscribing to new common stock at $2.50 a share. The master found the plan unfair, inequitable, and not feasible. Exceptions to the report of the master were filed.

Thereupon the debtor proposed an amended plan. The principal amendment to the plan provides that the holders of the gold notes and creditors shall receive 4 shares of new common stock, instead of 3 shares, for each $100 par value of their debt, and first preferred stockholders shall receive 8 shares of new common stock, instead of 12 shares, for each $100 par value of their stock. It also contains provisions intended to give holders of the new debentures control of the new company.

A hearing was held in open court upon the fairness and feasibility of the amended plan. Acceptances of the amended plan were filed by the necessary percentages of security holders. Should the amended plan be confirmed?

In November, 1925, the debtor was organized as a holding company. The New York banking house of Schluter & Co. acted as the company's banker. Late in 1928 that banking house, with associates, sold the first preferred stock. Schluter & Co. took an active part in the management of the debtor and since 1932 controlled its board of directors.

The debtor owns all the capital stock of American Department Stores Corporation of Pennsylvania. In turn that corporation owns all the capital stock of four companies operating smaller stores in Uniontown, Warren, Washington, and Brownsville in Pennsylvania. All of the stock of these four subsidiary companies is pledged to secure a debenture issue of the Pennsylvania corporation amounting to $671,000. In the five fiscal years ending January 1, 1935, the operations of these four stores resulted in a loss of almost $300,000, although in the year 1934 the operations showed a net profit of about

$20,000. The annual interest charges on the debentures amounts to $40,260. The consolidated income account of the Pennsylvania corporation and its subsidiaries for 1935 showed a net loss of $77,976.42. The master found, there is no real equity for the debtor in the Pennsylvania corporation. The court concurs in his finding.

The outstanding liabilities of the debtor dealt with under the amended plan are:

| | |
|---|---:|
| Notes partly secured by collateral of the face amount of $80,000 and claiming priority over other claims | $ 135,970.26 |
| Interest thereon to April 14, 1934 (the date of filing bankruptcy petition) | ——— |
| Other prior claims (approximate) | 5,800.00 |
| 6% Sinking Fund Gold Notes due 1947 | 980,750.00 |
| Interest thereon to April 14, 1934 | 75,844.67 |
| Miscellaneous claims (estimated) | 10,000.00 |
| Landlords' claims (contingent upon approval of plan) | 44,800.00 |
| | $1,253,164.93 |

| Outstanding capital stock of the debtor | |
|---|---:|
| First preferred, par value | 393,500.00 |
| Second preferred, par value | 304,620.00 |
| Common stock, without par value | 353,191 shares |

The substantial asset of the debtor is 95 per cent. of the capital stock of Brager-Eisenberg, Inc., a large department store in Baltimore, Md.

Assuming this stock, including good will, and a third mortgage for $100,000 as an asset, is worth $1,000,000, there is no doubt the debtor is insolvent.

According to the amended plan the following securities will be issued by the new company:

(a) Holders of the notes for $135,970.26 shall receive the $80,000 in collateral pledged to secure the notes. For the balance new debentures equal to 70 per cent. of the balance plus interest to April 14, 1934, and new common stock of a par value equal to 30 per cent. of the balance plus interest to April 14, 1934. It is estimated in the amended plan that this balance will require $31,000 of new debentures and approximately 5,300 shares of new common stock.

(b) Holders of gold notes and miscellaneous claims shall receive new debentures equal to 70 per cent. of the principal amount thereof plus interest to April 14, 1934, and in addition 4 shares of new common stock for each $100 par value of gold notes and miscellaneous claims; estimated to require $679,000 of new debentures and 36,000 shares of new common stock.

(c) Holders of first preferred stock receive 8 shares of new common stock for each $100 par value of their stock; estimated to require 31,480 shares of new common stock. They will also receive rights to subscribe to new common stock as follows: For each $100 par value of first preferred stock the right to subscribe to 5 shares of new common stock at $2.50 per share. This subscription right is assignable and good for a period of three months from the date of confirmation of the plan. To meet these rights approximately 19,675 shares of new common stock must be provided.

(d) Holders of second preferred and common stock are given the right to subscribe for new common stock at $2.50 per share. This may require the issuance of a maximum of 65,781 shares of new common stock.

Summarizing the provisions of the amended plan under the heading "Basis of exchange of existing securities and claims for new securities, etc.," the capital structure of the new company will be:

Debentures dated January 2, 1936 and
due January 2, 1946 with interest at
6% ................................. $710,000.00
Common stock, par value $2.50,
  To be issued on confirmation of
    plan ........................... 72,780 shares
  To meet subscription rights........ 85,456 shares

Several condensed balance sheets of the Brager Company and pro forma balance sheets of the new company prepared by the comptroller of those companies, respectively, were put in evidence. Two items merit attention: (1) Good will—$373,227.42; (2) third mortgage on the property occupied by the Brager store—$100,000. The master found the item of $373,227.42 did not represent any attempt on the part of the management of the Brager Company to value its good will. It was a figure arbitrarily put on the books of the company to take care of a loss which occurred when the Eisenberg store was acquired in 1929 and has been so carried ever since. The mortgage of $100,000 carries no interest. It is conceded to be of doubtful value unless it be for trading purposes in negotiating a new lease on the store property which expires in 1947. The master valued it at $10,000.

Aside from these two items, the real value of the Brager stock is not substantially greater than the total of the debentures to be issued by the new company.

This leaves the common stock only such value as should be assigned to good will, which is speculative and uncertain.

Assuming a large part of present and prospective net earnings of the Brager Company are paid to the new company by way of dividends on the 95 per cent. of Brager stock, there will be sufficient income to pay the interest on the new debentures and leave a substantial sum for a sinking fund for retirement of the debentures when due. The master found the anticipated dividends on the Brager stock insufficient to retire the debentures at maturity. The future of the company necessarily depends, not only upon continued and increased earnings by the Brager Company, but upon a refunding operation on or before 1947, when the lease on the store property will expire. The success of the whole plan is contingent upon a continued revival of business, a corresponding increase in net revenues of the Brager store, and upon faith that the directors of the Brager Company will pay out in dividends a large percentage of its earnings. No dividends have been paid by the Brager Company to the trustee of the debtor.

The master found that a holding company as provided in the plan is unnecessary. Proponents of the plan frankly state in their brief: "Were this a new enterprise and not a reorganization, good judgment would reject such a set-up." There would be some excuse for a holding company if the debtor had some equity in the Pennsylvania corporation. This is eliminated.

It is argued that a decision about a holding company "involves merely a matter of business judgment" and that section 77B "does not require or authorize the courts to pass judgment upon business decisions"; and further, that, "even if the proposed new holding company is ridiculous and unnecessary, that would not make the plan unfair, inequitable or unfeasible," and "this element is not a ground on which the court is vested with discretion in disapproving any plan of reorganization." These contentions are unsound.

It is the duty of the court to pass upon the feasibility of the plan of reorganization. Although the plan were unopposed, the court should not approve any feature fundamentally unsound. Especially when the objectionable feature is a new holding company whose securities when issued may be sold to the public. Congress in subdivision (h) of section 77B (11 U.S.

C.A. § 207 (h) provided that: "All securities issued pursuant to any plan of reorganization confirmed by the court in accordance with the provisions of this section, * * * shall be exempt from all the provisions of the Securities Act." This imposes upon the courts the task of scrutinizing with care securities to be issued under a plan of reorganization.

Since 1932 Schluter & Co. has controlled the affairs of the debtor. Their conduct of those affairs has been severely criticised. While settlement of all claims against Schluter & Co. and former officials and directors of the debtor is provided for in the plan, it should be borne in mind that Schluter and his associates are the largest holders of the securities of the debtor and will receive the largest amount of the securities of the new company. Schluter testified: "We have about $208,000 of the present notes of the debtor corporation, 60,000 shares of common stock, between 900 and 1100 of the first preferred, and a nominal amount of the second."

[4] I find no justification for the creation of a new holding company to hold the stock of the Brager Company. I am not satisfied that the plan is fair and feasible, therefore I cannot approve it.